IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 23-1577
_____

James John Rud and Brian Keith Hausfeld,
on behalf of themselves and all others similarly situated,

Plaintiffs-Appellees,

vs.

Nancy Johnston, Executive Director, Minnesota Sex Offender Program,
And Jodi Harpstead, Department of Human Services Commissioner,
in their official capacities,

Defendants-Appellants.

On appeal from the United State District Court District of Minnesota
Case No. 23-cv-486-JRT-LIB

**DEFENDANTS-APPELLANTS' REPLY TO APPELLEES' OPPOSITION TO MOTION FOR TEMPORARY STAY AND RESPONSE TO MOTION TO EXPEDITE BRIEFING**

GUSTAFSON GLUEK PLLC

Daniel E. Gustafson, Esq. (#202241)
David A. Goodwin, Esq. (#386715)
Anthony J. Stauber, Esq. (#401093)
Joseph E. Nelson, Esq. (#402378)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55401
Telephone: (612) 333-8844

KEITH ELLISON
Attorney General
State of Minnesota

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

EMILY B. ANDERSON
Assistant Attorney General
Atty. Reg. No. 0399272

1

dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com
jnelson@gustafsongluek.com

GABRIEL ULMAN
Assistant Attorney General
Atty. Reg. No. 0402503

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
gabriel.ulman@ag.state.mn.us

*Attorneys for Defendants-Appellants*

# INTRODUCTION

Plaintiff James John Rud largely talks past Defendants' arguments, rather than responding to them. He ignores well-established principles of procedural due process, instead simply reiterating his (and the district court's) conclusion that he properly "alleged" such a claim. He rests on the assumption that the Transfer Order was violated despite introducing no evidence or legal authority to support that conclusion. And Rud adds no argument or evidence that he would suffer any harm in the face of a stay; nor can he contradict Defendants' ample evidence of the irreparable harm MSOP will face absent a stay of the injunction – indeed, in a different case, Rud affirmatively pleaded the treatment harms he now tries to minimize. Because Defendants are likely to succeed on their appeal, and because the balance of harms weighs strongly in favor of a stay, the Court should stay the district court's injunction order pending Defendants' appeal.

# ARGUMENT

**I. RUD FAILS TO REBUT THAT HIS CLAIM IS INCOMPATIBLE WITH PROCEDURAL DUE PROCESS AND THAT DEFENDANTS ARE ACCORDINGLY LIKELY TO SUCCEED ON APPEAL.**

Both parties agree that the most important issue in Defendants' motion to stay is whether Defendants are likely to succeed on appeal. *See, e.g., Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018); *Brady v. Nat'l Football League*, 640 F.3d 786, 789 (8th Cir. 2011). And while Rud relies heavily on the district court's previous

holdings, he does little to address the law of procedural due process – the only claim on which the district court found Rud had a likelihood of success.

> **A. The District Court's Conclusion That Defendants Violated Rud's Transfer Order—Even If Such A Violation Could Constitute A "Deprivation" For Procedural Due Process Purposes—Rests On No Evidence And No Legal Authority.**

It is undisputed that Rud's procedural due process theory fails if Defendants did not violate his Transfer Order. Rather than substantively defending the district court's conclusion that Defendants violated Rud's Transfer Order, however, Rud's brief simply assumes that Defendants did so as if it were established fact. That is not correct: instead, whether Defendants violated Rud's Transfer Order is a live issue in this case.

No evidence or legal authority establishes that Defendants violated the Transfer Order; to the contrary, the evidence establishes they did not. It is undisputed that Rud's Transfer Order requires Defendants to transfer Rud to CPS "within a reasonable time" and not by any particular date. *See In the Matter of the Commitment of James John Rud*, AP21-9106, Findings and Order (Minn. Comm. App. P. June 6, 2022). It is also undisputed that the Minnesota Supreme Court, in considering CAP transfer orders, declined to hold that transfer wait times substantially longer than Rud's were per se unreasonable and instead held that "[w]hat amount of time is reasonable in any given set of circumstances is an issue of fact to be determined by the district court." *McDeid v. Johnston*,

984 N.W.2d 864, 879 (2023).[1] It is further undisputed that the *only* facts in the record setting forth the circumstances surrounding Rud's transfer wait are contained in declarations from MSOP operational and treatment leadership, which set forth the resource scarcity issues they face and explain why their response to those issues is reasonable in balancing the competing demands on those resources.[2] Plaintiffs simply fail to provide any evidence or legal authority establishing a violation of the Transfer Order under the "set of circumstances" that undisputedly pertains. There accordingly exists no basis to conclude that any deprivation of any kind has taken place (even if Rud's understanding of procedural due process were otherwise correct).

---

[1] Rud otherwise appears to imply that *McDeid* held transfer orders implicate procedural due process. It simply did not do that; its holding is solely about state law and it expressly declines to answer any federal constitutional question. *McDeid*, 984 N.W.2d at 889 (Minn. 2023) ("We remand to the court of appeals to address whether the State Officials' clear obligation to transfer the Patients to CPS within a reasonable time following a CAP transfer order gives rise to a federal due process right…").

[2] For example, it is undisputed that: there is a waitlist for transfer to CPS, and clients are transferred off that list in a reasonable, first-come-first-serve manner (R. Doc. 30, at ¶¶ 6, 29); CPS has limited bed space, despite Defendants' attempts to expand it further (*id.* at ¶¶ 90-18); MSOP's program is designed for an 8:1 staffing ratio, and exceeding that ratio harms the therapeutic environment at MSOP, individual clients' treatment progress, and staff morale (R. Doc. 31 at ¶¶ 12, 15-17); exceeding available bedspace or staffing ratios will lead to regulatory consequences to MSOP (R. Doc. 30 at ¶¶ 25, 27-28); exceeding the staffing ratio at CPS will have negative security implications on MSOP and the public at large (R. Doc. 31 at ¶ 17).

This is the same error made by the district court, which concluded that Defendants had not transferred Rud within a reasonable time and that likely constituted a constitutional deprivation but cited no evidence or legal authority in support. R. Doc. 35 at 17. Defendants are likely to succeed on appeal because Rud failed to establish any deprivation of any right at all – much less a *constitutional* deprivation – where it was his burden to do so. *See Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### B. Even If Defendants Violated The Transfer Order, That Is Not A Procedural Due Process Issue.

Even if this Court borrows Rud's and the district court's assumption that Defendants have violated the Transfer Order, Plaintiffs do not rebut that such a violation still fails to state a procedural due process claim.

First, even if a state law "create[s] a certain right or entitlement," procedural due process might be implicated only if the state law extends that right or entitlement "*subject to specified factual findings.*" *Meis v. Gunter*, 906 F.2d 364, 386 ((8th Cir. 1990) (emphasis added). *Meis* provides an instructive example. There, Nebraska law required committed persons to be "informed of rules and policies concerning . . . inmate rights," and the plaintiff alleged he did not receive certain of those policies. 906 F.2d at 368. In finding procedural due process was not implicated, the Court observed that the statute at issue did "not create a certain right or entitlement subject to specified factual findings." *Id.* Rather, it was a "direct command that certain

4

information be conveyed. There is no question here of procedural due process." *Id.* (observing the plaintiff did not claim he was entitled to a hearing before the defendants failed to deliver him the policies he wanted).

The same is true here. Rud argues that the Transfer Order is a direct command that he be transferred, *not* subject to any additional specified factual findings or any additional procedure. But, as in *Meis*, that unquestionably is not the province of procedural due process. Instead, it is the province of *state* law alone whether and how to allow enforcement of that direct command – such as in a contempt proceeding. Neither Rud nor the district court explained why this alleged violation of a state court order – with their rationale extending, apparently, to essentially every court order allegedly commanding government behavior – is the concern of the federal Due Process Clause.

Second, and relatedly, Rud does not meaningfully respond to Defendants' argument that a plaintiff who claims an absolute entitlement to avoid an alleged deprivation – rather than conceding that the deprivation would have been constitutional (if not necessarily correct) if accompanied by additional procedure – does not have a procedural due process claim. Entry ID: 5260780, pp. 8-10; *see, e.g., Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' in not in itself unconstitutional."). Confirming that argument,

5

Rud's response does not concede that *any* procedures would have justified his wait to transfer.

*Meis* and *Zinermon* on the one hand, and Rud on the other, cannot both be correct. Rud's theory would apparently make *procedural* due process the guarantor of the *substantive* entitlement allegedly required by any state law directive to a government agency. The Due Process Clause would swallow state law whole under this theory. That is not and cannot be the law, and Defendants are likely to succeed on appeal and the preliminary injunction order should be stayed.

II. **DEFENDANTS, THE MSOP PROGRAM ITSELF, AND THE PUBLIC INTEREST WILL BE IRREPARABLY HARMED ABSENT A STAY.**

Further, Plaintiffs do not rebut that the balance of harms weighs strongly in favor of staying the district court's injunction order.

First, Rud does not (and cannot) dispute the institutional harms to MSOP if the district court is allowed to dictate how Defendants must deal with undisputed resource scarcity at MSOP. He admits that the Minnesota Legislature granted exclusive authority and discretion over operational and clinical decisions to the Commissioner of DHS and MSOP executive staff – the Defendants. *See* Minn. Stat. §§ 246B *et seq*.; R. Doc. 1-1, at ¶ 10 ("The Commissioner and MSOP Executive Director have exclusive authority over general operational decisions and treatment decisions.") At the same time, the district court ruled that the Minnesota Legislature likely created, by these same statutes, a protected liberty interest in

transfer to CPS "within a reasonable time." R. Doc. 35 at 15. But it would make no sense for the Minnesota Legislature to have: (1) granted Defendants discretionary and operational authority over MSOP and (2) to have granted MSOP clients a transfer right of such supposed importance as to make Defendants' operational judgment insufficiently weighty, as the district court appears to have concluded. In other words, the legislature could not have simultaneously created a constitutional right to transfer within a reasonable time and *also* stripped Defendants of their otherwise statutorily-granted discretion over what is operationally and clinically reasonable in light of resource shortages created, in part, by the Legislature's decision not to approve necessary funding. The *McDeid* court recognized this tension, "accept[ing] as correct" that Defendants "'retained some discretion' to determine when to transfer [MSOP clients with Transfer Orders] to CPS." *McDeid*, 984 N.W.2d at 877.

Balancing the needs of all MSOP's clients – those within the secure facilities, those currently at CPS, and those with transfer orders between the two – with existing funding and staffing shortfalls and consideration of public safety requires discretion, judgment, and expertise. Rud does not dispute that, nor has he entered any of his own evidence that Defendants are using that discretion unreasonably. Still, Rud asks this Court to allow Defendants' operational discretion to be stripped

7

away, with no guidance on what a more reasonable or fair system would be.³ It is inappropriate for the district court to have disturbed the results of the exercise of Defendants' state-law-granted discretion, especially on the total absence of evidence calling that exercise into question. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quotation omitted) ("Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."); *see also Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). The harm that MSOP operations will suffer in the face of the preliminary injunction is irreparable, and justifies a stay of that order.

Second, Rud does not dispute that treatment outcomes at MSOP will be harmed if the injunction goes into effect and staffing ratios are exceeded. R. Doc. 31 at ¶¶ 15-17. Nor can Rud dispute this with good faith – indeed, as a named plaintiff in *Karsjens v. Harpstead*, it was *Rud himself* who alleged the same treatment effects Defendants caution of here were not only harmful, but unconstitutional. *Karjsens v. Harpstead*, No. 11-cv-03657 (DWF/TNL), Doc. 635, p. 27 ¶ 95; *see also id.* at pp. 65 ¶ 267 & 66 ¶ 264. And he acknowledges that letting the injunction order go

---

³ And this, of course, is on top of the harm to staff morale and retention (which, in turn, may create additional treatment harm by further decreasing the number of available clinical staff), regulatory harms, and security harms Defendants set forth in their opening brief, none of which Rud disputes.

8

into effect may negatively harm other MSOP clients ahead of him on the transfer waitlist. R. Doc. 34-1.

Weigh this against the potential harm to Rud if the injunction is stayed pending appeal: he may have to wait a little more time (after the 8-plus months he waited before trying to adjudicate his Transfer Order in any forum) to be transferred to CPS. And there is no evidence that such a delay will impact Rud's treatment progress or targets in any way. R. Doc. 31 ¶¶ 8-9; R. Doc. 29 ¶¶ 4-5. The balance tilts sharply in favor of staying the injunction order pending appeal.

## CONCLUSION

For these reasons and those set forth in Defendants' opening brief, the motion to stay the preliminary injunction (R. Doc. 35) pending Defendants' appeal of that order should be granted.

Dated: April 7, 2023.

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*/s/ Emily B. Anderson*
AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

EMILY B. ANDERSON
Assistant Attorney General
Atty. Reg. No. 0399272

9

GABRIEL ULMAN
Assistant Attorney General
Atty. Reg. No. 0402503

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
gabriel.ulman@ag.state.mn.us

*Attorneys For Defendants-Appellants*

|#5470698-v1

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 23-1577

James John Rud and Brian Keith Hausfeld,
on behalf of themselves and all others similarly situated,

Plaintiffs-Appellees,

vs.

Nancy Johnston, Executive Director, Minnesota Sex Offender Program,
And Jodi Harpstead, Department of Human Services Commissioner,
in their official capacities,

Defendants-Appellants.

**CERTIFICATE OF COMPLIANCE**
(DEFENDANTS-APPELLANTS' REPLY TO APPELLEES' OPPOSITION TO MOTION TO
STAY AND RESPONSE TO MOTION TO EXPEDITE BRIEFING)

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f),

☒ This document contains 2,178 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6), because

☒   this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt. Times New Roman font.

Dated:  April 7, 2023.                          Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Emily B. Anderson*
AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

EMILY B. ANDERSON
Assistant Attorney General
Atty. Reg. No. 0399272

GABRIEL ULMAN
Assistant Attorney General
Atty. Reg. No. 0402503

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
gabriel.ulman@ag.state.mn.us

*Attorneys For Defendants-Appellants*

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 23-1577

James John Rud, et al.
      Plaintiffs-Appellees,

vs.

Nancy Johnston, et al.,
      Defendants-Appellants.

**CERTIFICATE OF SERVICE**
(DEFENDANTS-APPELLANTS' REPLY TO APPELLEES' OPPOSITION TO MOTION FOR TEMPORARY STAY AND RESPONSE TO MOTION TO EXPEDITE BRIEFING)

I hereby certify that on April 7, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 7, 2023.
              KEITH ELLISON
              Attorney General
              State of Minnesota

              *s/ Emily B. Anderson*
              AARON WINTER
              Assistant Attorney General
              Atty. Reg. No. 0390914

13

EMILY B. ANDERSON
Assistant Attorney General
Atty. Reg. No. 0399272

GABRIEL ULMAN
Assistant Attorney General
Atty. Reg. No. 0402503

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
gabriel.ulman@ag.state.mn.us

*Attorneys For Defendants-Appellants*

|#5470698-v1